UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ZELMA RIVAS,

                              Plaintiff,                    1:21-cv-00932 (BKS/DJS)

v.

NEW YORK LOTTERY and THE OFFICE OF
TEMPORARY AND DISABILITY ASSISTANCE,

                              Defendants.
_____

**Appearances:**

*Plaintiff pro se:*
Zelma Rivas
Clifton Park, NY 12065

*For Defendants:*
Letitia James
Attorney General of the State of New York
Melissa A. Latino
Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiff pro se Zelma Rivas, who is of Hispanic origin,[1] brings this employment discrimination action against Defendants New York Lottery ("NYL") and the Office of Temporary and Disability Assistance ("OTDA") pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. (Dkt. No. 1, ¶¶ 1, 5,

---

[1] In her previous action, Plaintiff also alleged that she was Black. (Dkt. No. 9-1, at 82).

35). Plaintiff alleges that Defendants subjected her to race, ethnicity, national origin, and citizenship-status discrimination, a hostile work environment, and retaliation, and that Defendants violated her constitutional rights. (*See generally id.*). Presently before the Court is Defendants' motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 9). The motion is fully briefed; Plaintiff has filed a response and Defendants have filed a reply. (Dkt. Nos. 11, 15). For the following reasons, Defendants' motion is granted.

## II.   BACKGROUND[2]

According to the Complaint, Plaintiff worked for Defendant NYL from November of 1995 until she was terminated on April 1, 2010. (Dkt. No. 1, ¶¶ 5, 8). Plaintiff began working for Defendant OTDA, where she is currently employed, in December of 2012. (*Id.* ¶ 5).

### A.   Prior Actions

This is the third in a series of complaints Plaintiff has filed with this Court regarding her employment at NYL. *See Rivas v. New York State Lottery* (*Rivas I*), No. 00-cv-00746 (FJS/DRH) (N.D.N.Y filed May 15, 2000); *Rivas v. New York State Lottery* (*Rivas II*), No. 16-cv-01031 (BKS/DJS) (N.D.N.Y. filed Aug. 23, 2016).

In *Rivas I*, Plaintiff brought suit against the NYL and seven other defendants, alleging, as relevant here, that the NYL racially discriminated against her in violation of, inter alia, Title VII and 42 U.S.C. § 1983. *Rivas I*, No. 00-cv-00746, ECF No. 58, at 1. The Court granted the NYL's motion for summary judgment, finding that Plaintiff failed to state a prima facie case under Title VII and that the § 1983 action against the NYL was precluded by the doctrine of sovereign immunity. *Rivas I*, No. 00-cv-00746, ECF No. 58, *aff'd* 53 F. App'x 176 (2d Cir. 2002).

---

[2] The facts are taken from Plaintiff's Complaint and attachments. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

2

Plaintiff filed *Rivas II* after her 2010 termination from the NYL. *Rivas II*, No. 16-cv-01031, ECF No. 1 (N.D.N.Y filed Aug. 23, 2016). Plaintiff sued the NYL alleging that the NYL subjected her to race, color, and national origin discrimination, retaliation and a hostile work environment, in violation of Title VII. *Rivas II*, No. 16-cv-01031, ECF No. 24, at 1–2. Plaintiff alleged, inter alia, that NYL, through Assistant Attorney General Roger Kinsey ("AAG Kinsey"), who represented NYL in *Rivas I*, engaged employees at her five subsequent places of employment, including OTDA, to stalk, harass, and bully her. *Rivas II*, No. 16-cv-01031, ECF No. 24, at 2–9. This Court granted NYL's motion to dismiss, finding that Plaintiff's allegations of discrimination and retaliation were time barred and that the complaint failed to state a plausible hostile work environment and retaliation claims. *Rivas II*, No. 16-cv-01031, ECF No. 24, at 9–17, *aff'd*, 745 F. App'x 192 (2d Cir. 2018).[3]

### B.   Current Action

Many of Plaintiff's present allegations are identical to the allegations she made against NYL in her prior actions; here, however Plaintiff has also named her current employer, OTDA as a defendant. (Dkt. No. 1, ¶ 3–4).

#### 1.   Employment at NYL

The Complaint repeats claims relating to Plaintiff's 1995 to 2010 employment at NYL, as well as her post-termination claims of discrimination and harassment by AAG Kinsey, all of which have been raised in *Rivas I* and *Rivas II* and have been rejected in prior rulings. These claims include allegations regarding failure to promote, hostile work environment, wrongful termination, and post-employment harassment, stalking, threats, and intimidation of Plaintiff and her family. (*See* Dkt. No. 1, ¶¶ 5–15, 34–37 (discussing events at the NYL dating back to 1997,

---

[3] The Supreme Court denied Plaintiff's petition for writ of certiorari in *Rivas II*. *Rivas v. N.Y. State Lottery*, 140 S. Ct. 43 (2019), *reh'g denied*, 140 S. Ct. 577 (2019).

the NYL's failure to promote her, outlining the events of the months preceding Plaintiff's 2010 discharge, Plaintiff's history of complaints of discrimination and harassment, her termination, and Plaintiff's allegations regarding AAG Kinsey in connection with his representation of the NYL in *Rivas I*), and *Rivas II*, No. 16-cv-01031, ECF No. 24, at 9–17 (discussing the same events)). As those events are fully set forth in *Rivas II*, No. 16-cv-01031, ECF No. 24, at 2–9, the Court does not repeat those allegations here and provides the following recitation of the new allegations in the Complaint concerning Plaintiff's employment at OTDA.

### 2. Employment at OTDA

Plaintiff alleges that her employment at OTDA, which began in 2012 and continues to the present day, has differed little from her employment at NYL. (Dkt. No. 1, ¶¶ 21, 29 ("The identical criminal actions the plaintiff has been subjected to at both state agencies is not a 'mere coincidence' but rather, evidence that a prohibitive linkage exists between the (NYL) and the Office of Temporary and Disability Assistance (OTDA).")). Plaintiff alleges that since the beginning, she has been "stalked, harassed and bullied" at OTDA. (*Id.* ¶ 21).

Plaintiff alleges that, like NYL, OTDA fosters a hostile work environment. (*Id.* ¶ 6). Plaintiff alleges she has "no workplace associates" and "is vilified, targeted, and deliberately isolated" at OTDA. (*Id.* ¶ 22). OTDA employees attempt to prevent Plaintiff "from fulfilling her contract with the State to perform her job duties by continually sabotaging her work to discredit her and have her fired." (*Id.*). OTDA employees also "[r]outinely . . . target, harass and bully the plaintiff in their emails to her." (*Id.*). In an effort "to remain employed, plaintiff is continually correcting the sabotage in her work." (*Id.*).

Plaintiff alleges that "[a]ll of the female Caucasian employees and some of the Caucasian men" who work with her on the 15th floor at OTDA "stalk the plaintiff with absolute impunity." (*Id.* ¶ 22). In addition, Plaintiff alleges that "[e]very time [she] gets up from her seat to use the

ladies room on the 15th floor . . . 3 to 5 women get up from their seats and stalk the plaintiff to the ladies' room, visually excited and laughing." (*Id.* ¶ 24). Plaintiff has used the restrooms on at least six other floors "to escape the stalking on the 15th floor," but "the women from the other floors stalk the plaintiff to the ladies' room[s]" on those floors as well. (*Id.*).

The alleged stalking and harassment by OTDA and its employees occurs outside the workplace as well. "When the plaintiff talks about individual OTDA employees in her apartment or elsewhere [on her cellphone] the next day, at the office . . . [OTDA] employees react to what the plaintiff [has said about them outside the office] by standing inches in front of her face and stalking her on the 15th floor" and repeating Plaintiff's personal information in the office. (*Id.* ¶ 23). Plaintiff also alleges that, at one point, "while plaintiff was working at (OTDA)," "Defendant's [sic] harassed the plaintiff's date" by stalking him after their first date. (*Id.* ¶ 17). Plaintiff "no longer has any girlfriends in her life because the Defendants harassed them all . . . because of their association with the plaintiff." (*Id.* ¶ 18).

The Complaint also alleges that Defendants have attempted to rape, murder, abduct, kidnap, arrest, and plant illegal drugs on her. (*Id.* ¶¶ 16, 17, 20, 35). "A male acquaintance told the plaintiff he was offered $1,000 to brutally sodomize and rape her," and "[t]he Defendants paid the male acquaintance to physically injure the plaintiff." (*Id.* ¶ 17). The male acquaintance also "told the plaintiff he was offe[re]d six-figures by the (NYL) to murder her." (*Id.*). Plaintiff claims that as a result, she "has been forced to remain single for fear of being murdered by the Defendant's [sic]." (*Id.*). Defendants attempted to murder her by tampering with her car on two occasions "while the plaintiff was working at (OTDA)." (*Id.* ¶ 16). The Complaint further claims that Defendants have stalked, threatened, harassed, and unlawfully surveilled Plaintiff, and have tracked and monitored her and her children "for over two decades." (*Id.* ¶ 20; *see also id.* ¶¶ 21–

5

23). "Defendants and (OTDA) management continue attempting to murder the plaintiff, have her arrested and fire her in order to permanently silence her." (*Id.* ¶ 20).

Plaintiff alleges that she "complained to (OTDA) management advising them she is stalked, harassed, bullied and her work is sabotaged," and that "(OTDA) management threatened the plaintiff with disciplinary action if she continues filing complaints that she is harassed by (OTDA) employees." (*Id.* ¶ 22). Defendants encourage employees to stalk and injure Plaintiff, by "reward[ing] [employees] with State promotions for injuring the plaintiff." (*Id.*). Moreover, "the plaintiff's comments in [] fair hearings are deleted," and she is "given misinformation and work information is withheld." (*Id.*).

### III.    STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that has been filed pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## IV. DISCUSSION

Defendants seek dismissal of the Complaint, asserting that: (1) it is precluded by res judicata; (2) it is barred by the Eleventh Amendment; (3) it is time-barred by the statute of limitations; (4) Plaintiff failed to exhaust her administrative remedies; and (5) the Complaint otherwise fails to state a plausible claim upon which relief may be granted. (Dkt. Nos. 9, 9-2).[4]

### A. Res Judicata

Defendants argue that the Complaint must be dismissed as barred by res judicata. (Dkt. No. 9-2, at 10–11). They assert that "[a] side-by-side comparison reveals that Plaintiff asserts the same or substantially similar claims in this Complaint as she had in her second prior complaint [in *Rivas II*], which was dismissed in its entirety." (Dkt. No. 9-2, at 11). Plaintiff opposes dismissal. (Dkt. No. 11, at 28–31).

"The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*, 105 F.3d 72, 78 (2d Cir. 1997) ("[A] final judgment will bar any subsequent action based on 'all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.'" (quoting Restatement (Second) of Judgments § 24(1)

---

[4] Because the Court finds Defendant's other arguments dispositive, the Court need not reach Defendant's third argument: that Plaintiff's § 1983 claims are barred by § 1983's three-year statute of limitations, and that many, if not all, her Title VII claims against the NYL and OTDA "are time-barred as she fails to allege that she timely filed an EEOC complaint within 300 days of the challenged event." (Dkt. No. 9-2, at 12–13). The Court nonetheless notes this argument as it may be helpful to Plaintiff to consider the applicable statutes of limitations in drafting an amended complaint. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir.2002) (applying three-year statute of limitations to § 1983 claims brought in New York); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) ("Title VII requires that individuals aggrieved by acts of discrimination [in states like New York] file a charge with the EEOC within . . . 300 days 'after the alleged unlawful employment practice occurred.'" (quoting 42 U.S.C. § 2000e–5(e)(1)).

7

(1982))). Claim preclusion applies where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan*, 214 F.3d at 285.

Those requirements are satisfied here with respect to Plaintiff's claims against NYL. First, the grant of summary judgment against Plaintiff in *Rivas I* and dismissal for failure to state a claim in *Rivas II* were judgments on the merits. *See Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 714–15 (2d Cir. 1977) (finding summary judgment dismissal to be judgment "on the merits"); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("[A] dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits." (internal quotations omitted)). Second, Plaintiff was a party in the prior litigation. Third, Plaintiff "asserted the same claims arising out of the same events in the prior cases." *Curry-Malcolm v. Rochester City Sch. Dist.*, No. 20-2808, 2021 WL 5764534, at *2, 2021 U.S. App. LEXIS 35903, at *5 (2d Cir. Dec. 6, 2021).

In her Complaint, Plaintiff asserts employment discrimination claims under Title VII and § 1983, alleging that NYL failed to promote her, wrongfully terminated her, placed her in an isolation room, orchestrated the harassment, stalking, threats, and intimidation of her and her family, and created a hostile work environment. (Dkt. No. 1, ¶¶ 5–6, 8, 12, 37). In *Rivas II*, Plaintiff named NYL as a defendant and asserted many of the same employment discrimination claims in violation of Title VII, premised on the same factual allegations. *Compare Rivas II*, No. 16-cv-1031, ECF 24, at 4–9 (granting NYL's motion to dismiss and outlining events leading to Plaintiff's 2010 termination at NYL; factual allegations regarding the NYL and AAG Kinsey's alleged retaliation and orchestration of daily stalking and bullying of Plaintiff post-NYL

8

employment); *with* (Dkt. No. 1, ¶¶ 7–12, 32–45 (present complaint alleging facts surrounding 2010 NYL termination; factual allegations regarding the NYL and AAG Kinsey's alleged retaliation and orchestration of daily stalking and bullying of Plaintiff post-NYL employment)). To the extent that Plaintiff attempts to assert different claims against NYL, those claims are also precluded because they are based on the same incidents. *Curry-Malcolm*, 2021 WL 5764534, at *3, 2021 U.S. App. LEXIS 35903, at *6 (precluding claims "because they are rooted in the same series of events as the prior complaints"); *see United States v. Tohono O'Odham Nation*, 563 U.S. 307, 316 (2011) ("The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring claims arising from the same transaction." (internal quotations omitted)). Accordingly, all claims against the NYL are barred by the doctrine of res judicata and are dismissed.

However, the Complaint differs from the prior complaints by naming OTDA, which was not a party to the previous actions, as a defendant, and asserting facts arising out of her subsequent employment with OTDA. (*See* Dkt. No. 1, ¶ 4). The claims against OTDA are not, therefore barred by res judicata. The Complaint nonetheless fails because, as discussed below, the Complaint fails to state a plausible claim for relief against the OTDA.

    **B.**    **Eleventh Amendment Immunity**

Defendants argue that Plaintiff's § 1983 claims against NYL and OTDA must be dismissed as barred by the Eleventh Amendment. (Dkt. No. 9-2, at 9). The Court agrees.

Under the Eleventh Amendment, the State, including its agents and instrumentalities, is absolutely immune from being sued, unless it consents or federal law provides otherwise. U.S. CONST. amend. XI; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 F. App'x

9

191, 192 (2d Cir. 2010) (internal citations omitted). State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142–47 (1993). Plaintiff's § 1983 claims against NYL and OTDA, which are state agencies, are therefore barred by the Eleventh Amendment. *Rivas I*, 53 F. App'x at 177; *Rosenberger v. N.Y. State Office of Temp. & Disability Assistance*, 153 F. App'x 753, 754 (2d Cir. 2005).

The fact that Plaintiff seeks "injunctive relief" in addition to monetary relief, (Dkt. No. 1, ¶ 47), does not change this conclusion. "Under the well-known exception to [the sovereign immunity bar] first set forth in *Ex parte Young*, 209 U.S. 123 (1908), 'a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law.'" *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)); *see also Ford v. Reynolds*, 316 F.3d 351, 354–55 (2d Cir. 2003) (explaining that "there is 'a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment'" (quoting *CSX Transp. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)). Here, although Plaintiff's Complaint references two state officials, Assistant Attorney General Roger Kinsey and EEOC Investigator David Ging, Plaintiff did not name either as a defendant in this case. (Dkt. No. 1, ¶¶ 3–4; *see, e.g.*, Dkt. No. 1, ¶ 33).[5] Accordingly, Plaintiff's § 1983 claims are dismissed.

---

[5] Nor is there any plausible claim for prospective injunctive relief from future violations of federal law as to either of these individuals. The allegations against Kinsey concern his conduct in representing NYL in *Rivas I*. (Dkt. No. 1, ¶¶ 33–35). EEOC Inv. Ging allegedly told Plaintiff on April 13, 2013, that the fact that she does not agree with the EEOC's decision in the NYL case "does not mean that [she] can keep applying for more administrative investigations" and that "it is unlikely [EEOC] would conduct an investigation into [her] complaint." (*Id.* ¶ 43).

### C. Exhaustion of Administrative Remedies

Defendants seek dismissal of Plaintiff's Title VII claims on the basis that Plaintiff failed to timely exhaust her administrative remedies. (Dkt. No. 9-2, at 13–14). "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)); *see also* 42 U.S.C. § 2000e-5(e), (f). "Title VII requires that individuals aggrieved by acts of discrimination [in states like New York] file a charge with the EEOC within . . . 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v*, 801 F.3d at 78–79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–5(e)(1)). The Title VII exhaustion requirements, and their filing deadlines, operate as an affirmative defense. *Hardaway*, 879 F.3d at 491. "[T]he burden of pleading and proving Title VII exhaustion" therefore "lies with defendants." *Id*.

"Statute of limitations defenses are affirmative defenses, which normally cannot be decided on a motion to dismiss." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009). Additionally, "filing a timely charge of discrimination with the EEOC is . . . a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Dismissal may be appropriate, however, "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" *In re S. African Apartheid Litig.*, 617 F. Supp. 2d at 287.

Plaintiff alleges she filed complaints with the EEOC against the NYL in 1998, 1999, 2000, 2001, 2006, 2009, 2013, and 2016. (Dkt. No. 1, ¶ 44). Her claims against the NYL are, however barred by res judicata and there is no indication in any of Plaintiff's submissions that she filed a claim with the EEOC regarding the actions of OTDA. The Court thus cannot say it is

clear from the face of the Complaint that Plaintiff failed to exhaust her administrative remedies. Accordingly, Defendants' motion to dismiss for failure to exhaust administrative remedies is denied.

    **D.**    **Failure to State a Claim**

        1.    **Discrimination**

Defendants argue for dismissal of the Title VII discrimination claim against OTDA on the ground that Plaintiff fails to allege that she was discriminated against based on ethnicity, race, color or national origin, in violation of Title VII. (Dkt. No. 9-2, at 15–16). Plaintiff opposes Defendants' motion. (Dkt. No. 11, at 37–38).

A Title VII discrimination claim "is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (applying burden-shifting framework to claims under § 1981 and § 1983). As this motion is one to dismiss, however, the Court "focus[es] only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation." *Id.* Thus, to defeat a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87. As to adverse action for purposes of a discrimination claim, the Second Circuit has held:

> A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

*Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 304 (2d Cir. 2017) (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). A plaintiff may show her race or national origin was a motivating factor for the adverse action "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. A complaint is sufficient "if it pleads specific facts that support a minimal plausible inference of such discrimination." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).

Plaintiff alleges she has been subject to the following acts at OTDA: unlawful surveillance, (Dkt. No. 1, ¶ 21); harassment, bullying, disparagement, threats of disciplinary action, sabotage, and stalking, (*id.* ¶¶ 22, (alleging that "[a]ll of the female Caucasian employees and some of the Caucasian men hired to work on the 15th floor at (OTDA) stalk the plaintiff" and that Plaintiff's coworkers "tried to stop the plaintiff from fulfilling her contract with the State to perform her job duties by continually sabotaging her work to discredit her and have her fired"), 28 (alleging Caucasian female stalked Plaintiff in the lobby of OTDA)); and that she has been ridiculed and laughed at during internal job interviews, (*id.* ¶ 26). Even construed liberally, Plaintiff's Complaint fails to allege that she suffered an adverse employment action because of her ethnicity, race, color, or national origin.[6] The only allegations in the Complaint that conceivably allude to race-based treatment at OTDA are the allegations that "[a]ll of the female Caucasian employees and some of the Caucasian men," with whom Plaintiff works on the 15th floor at OTDA, "stalk the plaintiff" and that on July 14, 2021, a Caucasian female stalked

---

[6] Defendants assume for purposes of the present motion that Plaintiff adequately alleges adverse actions. As discussed *infra* Section IV.D.3., Plaintiff's allegations are insufficient to allege she suffered an adverse action under the broader definition applicable to retaliation claims. *Vega*, 801 F.3d at 90. It is therefore doubtful that Plaintiff has sufficiently alleged adverse action for purposes of her discrimination claim.

13

Plaintiff in the lobby of OTDA. (*Id.* ¶¶ 22, 28). But these generalized allegations of stalking by her Caucasian coworkers, unaccompanied by concrete facts, are insufficient to raise an inference of discrimination based on ethnicity, race, color, or national origin. Without factual details describing the employees' conduct on these occasions, the allegation that Caucasian employees "stalk[ed] the plaintiff" is vague and conclusory and does not allow a plausible inference that OTDA acted unlawfully toward her or subjected her to race or national origin discrimination. *See, e.g., Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (finding the plaintiff's "vague and conclusory allegation that he was victim to a 'campaign to purge [WAFRA] of elder workers,'" lacked "facial plausibility," explaining that although the plaintiff provided "the names and positions of" terminated employees, he provided "no details that would support any inference of age discrimination, such as the executives' ages or the dates and stated reasons for their terminations"); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, Plaintiff's claim of Title VII discrimination against OTDA is dismissed.

### 2.     Hostile Work Environment

Plaintiff alleges Defendants subjected her to a hostile work environment based on ethnicity, race, color or national origin. (Dkt. No. 1, ¶¶ 29, 37). Plaintiff's hostile work environment claim is subject to dismissal for the same reason as her race discrimination claim: the Complaint fails to allege facts supporting an inference of race-based conduct.

"To establish a hostile work environment under Title VII . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys.*,

*Inc.*, 510 U.S. 17, 21 (1993)). Even assuming Plaintiff sufficiently alleges an abusive working environment at OTDA, as discussed above, there are no facts alleged in connection with any incident that sufficiently contain or suggest an overtone on the basis of Plaintiff's race, ethnicity, color or national origin, save for conclusory statements and allegations. *Gong v. City Univ. of N.Y.*, 846 F. App'x 6, 9 (2d Cir. 2021) (affirming dismissal of hostile work environment claim at motion to dismiss stage where "many of the alleged incidents lack any racial overtone"). Accordingly, Plaintiff's Title VII hostile work environment claim against OTDA is dismissed.

### 3. Retaliation

Defendants argue that Plaintiff's retaliation claim must be dismissed because Plaintiff fails to allege a causal connection between her purported protected activity and the alleged adverse actions. (Dkt. No. 9-2, at 17–18). Plaintiff alleges that OTDA retaliated against her for filing complaints or grievances by wrongfully terminating her and by treating her differently in the workplace. (Dkt. No. 1, ¶¶ 7, 12, 14–15, 22, 35, 37).

Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3a. "Thus, for a Title VII retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

#### a. Protected Activity

Plaintiff alleges that she complained to OTDA about being stalked, harassed, and bullied. (Dkt. No. 1, ¶ 22 ("Plaintiff complained to (OTDA) management advising them she is stalked,

harassed, bullied and her work is sabotaged."). However, there are no allegations that allow an inference that Plaintiff complained of racial, ethnic, color, or national origin discrimination and thus there is no basis to infer that Plaintiff engaged in protected activity under Title VII. *See Qamar v. Sheridan Healthcare of Conn.*, No. 18-cv-1359, 2020 WL 4548136, at *11, 2020 U.S. Dist. LEXIS 140557, at *35 (D. Conn. Aug. 6, 2020) ("[C]omments which do not complain of discrimination—in other words, complaints about the workplace which do not implicate the protections of Title VII—are not protected."); *Int'l. Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity.").[7]

### b. Adverse Actions and Causal Connection

Generally, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Id.* (quoting *Burlington Northern*, 548 U.S. at 64). The Supreme Court has explained that it has:

> phrase[d] the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully

---

[7] To the extent Plaintiff seeks to rely on her complaints to the EEOC regarding her prior employer, NYL, she has failed to plausibly allege how the OTDA was made aware of these complaints or that any complaints regarding NYL were the but-for cause of adverse actions at OTDA.

16

captured by a simple recitation of words used or the physical acts performed."

*Burlington Northern*, 548 U.S. at 69 (quoting *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)). To determine "whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).

"To adequately plead causation, 'the plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action.'" *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90). However, "'[b]ut-for' causation does not . . . require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (quoting *Vega*, 901 F.3d at 91). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action," *Vega*, 801 F.3d at 90, or "directly through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Plaintiff's summary of adverse actions that occurred at OTDA during the "8 1/2 years" Plaintiff "has worked" there, i.e., since 2012, (Dkt. No. 1, ¶¶ 21–22), include unlawful surveillance, harassment, bullying, disparagement, threats of disciplinary action, sabotage, stalking, as well as an allegation that Plaintiff was ridiculed and laughed at during internal job interviews, (*id.* ¶¶ 21–22, 26, 28). Without additional details, these conclusory allegations are insufficient to allege adverse action. *See, e.g.*, *Mira v. Argus Media*, No. 15-cv-9990, 2017 WL 1184302, at *8, 2017 U.S. Dist. LEXIS 46691, *24–25 (S.D.N.Y. Mar. 29, 2017) (noting that

17

while it was "not difficult to imagine that retaliatory stalking and surveillance might intimidate a reasonable employee and dissuade her from complaining about discrimination," because the plaintiff's allegation of stalking and surveillance were largely "unaccompanied by any concrete facts," the court declined "to draw [the plaintiff's] far-fetched inference that the alleged events ensued from a massive stalking and surveillance project by" her employer); *Baez v. Visiting Nurse Serv. of New York Fam. Care Serv.*, No. 10-cv-6210, 2011 WL 5838441, at *6, 2011 U.S. Dist. LEXIS 133930, *16 (S.D.N.Y. Nov. 21, 2011) ("The generalized '[h]arassment, [b]ullying, . . . [i]ntimidations, [and] [s]talking' plaintiff claims to have experienced after filing Charge II are too non-specific to support a retaliation claim.").

Further, even if Plaintiff sufficiently alleged adverse action, the Complaint fails to allege any facts from which a causal connection between Plaintiff's undated complaint to OTDA and the alleged retaliatory actions at OTDA could be inferred. First, the Complaint alleges no facts from which direct retaliatory animus can be inferred. Second, although "protected activity followed closely in time by adverse employment action," *Vega*, 801 F.3d at 90, may provide a basis for inferring causation, the facts here are insufficient to support such an inference. While the majority of the allegations of adverse action are unaccompanied by dates and thus prohibit any consideration of temporal proximity, the Complaint does provide dates in connection with two of the allegedly retaliatory incidents at OTDA—a summer 2019 OTDA picnic at which she was allegedly harassed and an incident on July 14, 2021, when a Caucasian female "stalked" Plaintiff in the lobby. (Dkt. No. 1, ¶¶ 27–28). However, absent any indication of when Plaintiff complained to OTDA, temporal proximity does not allow an inference of causality. *See Harper v. Brooklyn Children's Ctr.*, No. 12-cv-4545, 2014 WL 1154056, at *5, 2014 U.S. Dist. LEXIS 37649, at *14 (E.D.N.Y. Mar. 20, 2014) (finding that because the plaintiff could not "rely on

temporal proximity to establish the required causality" given the two-year gap between the protected activity and alleged retaliation, and because the plaintiff did not otherwise allege "any facts from which direct retaliatory animus" could be inferred, the complaint failed to state a plausible Title VII retaliation claim). Thus, because Plaintiff fails to sufficiently show a retaliatory purpose either "directly through evidence of retaliatory animus directed against the plaintiff," *Littlejohn*, 795 F.3d at 319, or "indirectly by timing," *Vega*, 801 F.3d at 90, Plaintiff's Title VII retaliation claims against OTDA are dismissed.[8]

## V. AMENDED COMPLAINT

In light of Plaintiff's pro se status, the Court will give her an opportunity to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiff is advised that an amended complaint will completely replace the original complaint in this action, and render the original complaint "of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).

## VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 9) the Complaint (Dkt. No. 1) is **GRANTED** in its entirety; and it is further

**ORDERED** that all claims against New York Lottery are **DISMISSED with prejudice**; the claims under 42 U.S.C. 1983 against the Office of Temporary and Disability Assistance are **DISMISSED** without leave to amend as barred by the doctrine of sovereign immunity; and the Complaint (Dkt. No. 1) is otherwise **DISMISSED with leave to amend**; and it is further

---

[8] In light of this decision the Court has not addressed Defendants' argument that the Complaint is time barred by the statute of limitations.

**ORDERED** that Plaintiff is granted leave to file an amended complaint within thirty (30) days of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk shall close this case without further order.

**IT IS SO ORDERED**.

Dated: August 23, 2022
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

20