**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ZELMA RIVAS,

                              Plaintiff,                1:21-cv-00932 (BKS/DJS)

v.

NEW YORK LOTTERY and THE OFFICE OF
TEMPORARY AND DISABILITY ASSISTANCE,

                              Defendants.

---

**Appearances:**

*Plaintiff pro se:*
Zelma Rivas
Clifton Park, NY 12065

*For Defendants:*
Letitia James
Attorney General of the State of New York
Melissa A. Latino
Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff pro se Zelma Rivas, who Hispanic,[1] brings this employment discrimination action against Defendants New York Lottery ("NYL") and the Office of Temporary and Disability Assistance ("OTDA") pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17. (Dkt. No. 23). Plaintiff

---

[1] In a previous action, *Rivas v. New York State Lottery (Rivas II)*, No. 16-cv-01031 (BKS/DJS) (N.D.N.Y. filed Aug. 23, 2016), Plaintiff also alleged that she was Black, *see Rivas II*, Dkt. No. 22-1, at 53.

alleges that Defendants subjected her to race, ethnicity, national origin, and sex discrimination, a hostile work environment, and retaliation, and that Defendants violated her constitutional rights. (*See generally id.*). On August 23, 2023, the Court granted Defendants' motion to dismiss the Complaint. (Dkt. No. 22). Specifically, the Court found: (1) Plaintiff's claims against the NYL were barred by the doctrine of res judicata; (2) Plaintiff's § 1983 claims against OTDA (and the NYL) were barred by the Eleventh Amendment; and (3) while Defendants were not entitled to dismissal of Plaintiff's Title VII claims on the ground that Plaintiff had failed to exhaust administrative remedies, her Title VII claims were subject to dismissal for failure to allege a plausible discrimination, hostile work environment, or retaliation claim under Title VII. (*Id.*). In view of Plaintiff's pro se status, the Court granted Plaintiff leave to amend with respect to her Title VII claims against OTDA. On September 20, 2022, Plaintiff filed an Amended Complaint. (Dkt. No. 23). Presently before the Court is Defendants' motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 26). The motion is fully briefed. (Dkt. Nos. 28, 29). For the following reasons, Defendants' motion is granted.

## II.   BACKGROUND[2]

The Amended Complaint contains many of the same allegations as the original Complaint. The Court assumes the parties' familiarity with both the facts alleged in the original

---

[2] The facts are taken from (1) the Amended Complaint, (Dkt. No. 23), and, in view of Plaintiff's pro se status, (2) Plaintiff's response to Defendants' motion, (Dkt. No. 28), to the extent it is "consistent with the allegations" in the Amended Complaint. *Crum v. Dodrill*, 562 F. Supp. 2d 366, 373–74 & n.13 (N.D.N.Y. 2008) ("[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint."). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Complaint and procedural history of this case[3] and summarizes the Amended Complaint's new allegations as follows.

"Shortly after" Plaintiff was hired by OTDA in 2012 as a "English speaking Legal Affairs Specialist 1" "a supervisor asked the plaintiff to answer Hispanic calls because there were not enough Spanish Speaking Legal Affairs Specialist 1." (Dkt. No. 23, at 13). After Plaintiff "complied," Caucasian employees "started harassing" her by "screaming" at her, "body slamming" her, ignoring her questions, and "stalking and bullying her." (*Id.*). "Plaintiff told the supervisor she was no longer interested in answer [sic] calls from Hispanic speaking callers; and, she was hired as a English speaking Legal Affairs Specialist 1." (*Id.*). In addition, to the aforementioned conduct, Plaintiff has experienced the following: the "majority of the workforce" shuns Plaintiff, Plaintiff's comments in "fair hearings" are deleted, employees give Plaintiff "misinformation" and withhold information, "sabotage" her work, and eavesdrop on her, and management threatens Plaintiff "with disciplinary action if she continues filing complaints that she is harassed by (OTDA) employees." (*Id.* at 14).

On October 19, 2021, Plaintiff went to the James T. Foley Courthouse on a lunch break. (Dkt. No. 23, at 26–27). When the security staff screened her at the entrance, they found a marijuana joint she had "forgotten about" in her pocketbook. (*Id.*). OTDA management, and others, "through unlawful surveillance in [her] apartment, watched [Plaintiff] put the marijuana joint in [her] pocketbook and knew [she] forgot it was there." (*Id.* at 27). Plaintiff alleges that "[t]his is why so many OTDA employees were grinning" at her when she arrived at work that day. (*Id.*).

---

[3] This is the third in a series of complaints Plaintiff has filed with this Court regarding her employment at NYL. *See Rivas v. New York State Lottery (Rivas I)*, No. 00-cv-00746 (FJS/DRH) (N.D.N.Y filed May 15, 2000); *Rivas II*. The Supreme Court denied Plaintiff's petition for writ of certiorari in *Rivas II*. *Rivas v. N.Y. State Lottery*, 140 S. Ct. 43 (2019), *reh'g denied*, 140 S. Ct. 577 (2019).

On January 11, 2022, Plaintiff sent a request to Dominique Simoneaux, at OTDA to request that the WebEx interview for a Fair Hearing Specialist 2 position scheduled on January 13, 2022, could be rescheduled as Plaintiff was off from work on January 13. (Dkt. No. 23, at 16). Plaintiff received an email that the interview "was rescheduled on January 14, 2022." (*Id.*). Plaintiff declined the interview "because the harassment and disrespect towards the plaintiff continues." (*Id.*). Also on January 13, 2022, Plaintiff emailed "supervisors and managers within her chain of command" stating that it was "non-sensical" for her to attend the interview because Simoneaux and "Sarah" stalked, harassed, bullied, and "disrespected" Plaintiff and that she has been "forced to fight to remain employed at (OTDA) due to the on-going sabotaging of [her] work," and that she had "filed Civil Case, active in federal court, on August 18, 2021-See attachments." (*Id.* at 16–17). Plaintiff also wrote in the email that she believed the "workplace attacks" were being ordered by defense counsel in this case. (*Id.* at 17).

On January 14, 2022, Samuel Spitzberg, the director of administrative hearings, emailed Plaintiff to provide "another opportunity to clarify if she intended to interview for the position." (Dkt. No. 23, at 17). Plaintiff responded on January 22, 2022, again "copying supervisors and managers within her chain of command," stating that Spitzberg was "dishonest," that stalking was a violation of her federal civil rights, that she had filed a complaint with the New York Capitol Police on October 25, 2021 due to stalking, and that she was "forced to endure the stalking, harassment, belittlement, and other abusive behaviors at (OTDA) due to [her] minority status." (*Id.*).

On February 8, 2022, Plaintiff received a letter from Rebecca Jeffers, a human resources specialist, thanking Plaintiff for her interest in the position of Fair Hearings Specialist 2. (Dkt. No. 23, at 18). Jeffers stated that Plaintiff appeared to meet the qualifications for provisional

4

appointment, and that if Plaintiff was selected for the position, her appointment would be provisional and she would be required to obtain a score on a Fair Hearings Specialist 2 examination that would allow for permanent appointment. (*Id.*).

On February 18, 2022, Plaintiff received a letter from James Ryan, an associate director of human resources at OTDA, stating "it is our initial judgment that you are unable to perform your job duties due to a disability that did not result from occupational injury or disease." (Dkt. No. 23, at 16). Ryan further stated in the letter that "Zelma Rivas was contacted on January 10, 2022 by a supervisor within the Office of Administrative Hearing (OAH) asking if she wanted to interview for a promotional opportunity to a Fair Hearing Specialist 2 . . . position due to being reachable on the current departmental promotional eligible list." (*Id.*). On "March 9, 2022, (OTDA) attempted to fire the plaintiff using medical" and she "was ordered to be evaluated by the NYS Department of Civil Service, Employee Health Service" ("EHS"), (Dkt. No. 28, at 18, 20–21). In a letter dated March 15, 2022, "Rebecca Rourke, Psy.D, at the (EHS)," wrote that "the plaintiff is fit to perform the essential duties of a Fair Hearings Specialist 1." (Dkt. No. 23, at 18). At some point, Plaintiff "submitted a copy" of this case to Rourke. (*Id.*).

On February 28, 2022, Plaintiff wrote a letter to New York State Governor Kathy Hochul stating that she had been working on her opposition to Defendants' motion to dismiss on her laptop but was not able to save her work and had to retype it "over and over again." (Dkt. No. 23, at 25). Plaintiff wrote that she believed "someone in a position of authority . . . was monitoring [her] laptop." (*Id.*).

On May 13, 2022, Spitzberg emailed Plaintiff to inform her that she was required to appear for an in-person meeting the following week. (Dkt. No. 23, at 20). When Plaintiff asked about the "topic of the meeting," Spitzberg replied that it was "to review appropriate use of State

email systems" to ensure "we understand the rules and processes." (*Id.*). Plaintiff told[4] Spitzberg that when she saw him "on the 15th floor lobby" "several weeks ago," she ran away because she was "afraid" he would "physically assault her" and accused Spitzberg of "commit[ing] a felony" and lying to EHS on March 9, 2022, when he "tried to use medical as a means to have" Plaintiff fired. (*Id.* at 20–21). Plaintiff also told Spitzberg that "[t]his information is in the civil case" that she filed and that she had "reported it" to OTDA management "to no avail" "due to [her] minority status." (*Id.* at 21). Plaintiff alleges Spitzberg "made sexually [sic] advances at her in the past." (*Id.*).

## III. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that has been filed pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v.*

---

[4] It is not clear from the Amended Complaint whether Plaintiff's communication to Spitzberg was via email or in person.

*Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## IV. DISCUSSION

Defendants seek dismissal of the Amended Complaint, asserting that: (1) it is precluded by res judicata; (2) it is barred by the Eleventh Amendment; (3) it is time-barred by the statute of limitations; (4) Plaintiff failed to exhaust her administrative remedies; and (5) the Amended Complaint otherwise fails to state a plausible claim upon which relief may be granted. (Dkt. No. 26-1).

### A.   Res Judicata and the Eleventh Amendment

The Amended Complaint continues to name the NYL as a defendant and asserts § 1983 claims against the NYL and OTDA, both of which are state agencies. In its prior decision, the Court dismissed all claims against the NYL with prejudice as barred by res judicata and dismissed all § 1983 claims against the NYL and OTDA without leave to amend. (Dkt. No. 22, at 19). Accordingly, Defendants' motion to dismiss the NYL as a defendant in this case and to dismiss all § 1983 claims is granted. (*See id.* at 7–10).

### B.   Title VII – Failure to Exhaust Administrative Remedies

Defendant OTDA continues to seek dismissal of Plaintiff's Title VII claims on the ground that Plaintiff failed to timely exhaust her administrative remedies. (Dkt. No. 26-1, at 9–10). Defendant argues: "Given that Plaintiff has proffered no additional facts in her Amended Complaint to indicate that she filed her EEOC complaint no more than 300 days after the unlawful employment practice occurred, her claims must be dismissed." (Dkt. No. 26-1, at 10). As the Court previously explained: "The Title VII exhaustion requirements, and their filing deadlines, operate as an affirmative defense. '[T]he burden of pleading and proving Title VII exhaustion' therefore 'lies with defendants.'" (Dkt. No. 22, at 11 (quoting *Hardaway v. Hartford*

7

*Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018))). In general, affirmative defenses cannot be decided on a motion to dismiss unless the defense "clearly appears on the face of the pleading." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009). As the Court cannot say it is clear from the face of the Amended Complaint, which essentially contains the same allegations regarding Plaintiff's interactions with the EEOC as the original Complaint, (*compare* Dkt. No. 23, at 34–36 (alleging that Plaintiff "filed timely charges with the ('EEOC')," further filings would be futile, and that Plaintiff is entitled to the "continuing violation exception"); *with* Dkt. No. 1, at 22–24 (same)), that Plaintiff failed to timely exhaust her administrative remedies with respect to her Title VII claims against the OTDA, Defendant's motion is denied.

### C. Title VII – Discrimination

OTDA argues for dismissal of the Title VII discrimination claim the ground that Plaintiff fails to allege that she was discriminated against based on ethnicity, race, color, national origin, or sex in violation of Title VII. (Dkt. No. 26-1, at 10–14). Plaintiff opposes Defendants' motion. (Dkt. No. 28, at 32–38).

A Title VII discrimination claim "is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (applying burden-shifting framework to claims under § 1981 and § 1983). As this motion is one to dismiss, however, the Court "focus[es] only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation." *Id.* Thus, to defeat a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). As to adverse action for purposes of a discrimination claim, the Second Circuit has held:

> A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

*Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 304 (2d Cir. 2017) (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). A plaintiff may show her ethnicity, race, color, national origin, or sex was a motivating factor for the adverse action "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. A complaint is sufficient "if it pleads specific facts that support a minimal plausible inference of such discrimination." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016). Construed liberally, the Amended Complaint appears to allege the following adverse actions: assignment to Spanish Speaking Legal Affairs Specialist 1, harassment by co-workers, and failure to promote.

### 1.      Assignment to Spanish Speaking Legal Affairs Specialist 1

While it is plausible to infer that a supervisor's direction that Plaintiff answer "Hispanic calls" is race-based, Plaintiff provides no factual allegations that would allow a plausible inference that her supervisor's request that she answer "Hispanic Calls" was an adverse employment action. In *Vega*, the plaintiff alleged that he was assigned to "classes with increased numbers of Spanish-speaking students," and that "he was forced to spend disproportionately more time preparing for his classes and therefore experienced a material increase in his responsibilities without additional compensation." 801 F.3d at 88. The Second Circuit therefore concluded that the plaintiff had "plausibly alleged that his assignment to classes with increased numbers of Spanish-speaking students was an 'adverse employment action.'" *Id.* By contrast,

9

here, Plaintiff provides no facts concerning the difference in her responsibilities following her assignment to Spanish Speaking Legal Affairs Specialist 1 or its impact on her employment. The Court therefore concludes that Plaintiff has failed to allege her assignment to "answer Hispanic calls" was an adverse action. *See, e.g.*, *Richard v. New York City Dep't of Educ.*, No. 16-cv-957, 2017 WL 1232498, at *11, 2017 U.S. Dist. LEXIS 50748, at *30 (E.D.N.Y. Mar. 31, 2017) (finding, for purposes of discrimination claim, that the plaintiff failed to allege that being placed on "probation" was an adverse employment action because the plaintiff failed "to allege any facts to show that the April 22 Letter resulted in his probation, and if so, the terms of the probation or its effect, if any, on his employment").

### 2. Harassment by Co-Workers

Plaintiff asserts that "not long after" she was assigned to take "Hispanic calls," "Caucasian employees" began "screaming" and "glaring" at her, "body slamming" her, ignoring her questions, and "stalking and bullying her." (Dkt. No. 23, at 13). Plaintiff alleges that when she "complained to (OTDA) management advising them that she is stalked, harassed, bullied and her work is sabotaged," "management threatened" to impose "disciplinary action" if Plaintiff continued to file harassment complaints. (*Id.* at 14). While Plaintiff's description of her co-workers' conduct toward her is alarming, she provides no factual details regarding any of her allegations, such as who the employees were, what they said, or when or where any of these incidents occurred. While a court must "generally accept the truth of a plaintiff's allegations" at the pleading stage, *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022), a complaint that contains "labels and conclusions" or "naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Without facts describing these alleged incidents, the Court has no basis for inferring an adverse action or that OTDA is liable for race-based discrimination. *See, e.g., Lively v. WAFRA Inv.*

*Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (finding the plaintiff's "vague and conclusory allegation that he was victim to a 'campaign to purge [WAFRA] of elder workers,'" lacked "facial plausibility," explaining that although the plaintiff provided "the names and positions of" terminated employees, he provided "no details that would support any inference of age discrimination, such as the executives' ages or the dates and stated reasons for their terminations"); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### 3. Failure to Promote

The Amended Complaint also contains several allegations regarding a promotion for which Plaintiff was eligible in or about January or February 2022. (Dkt. No. 23, at 16–17 (alleging that "Zelma Rivas was contacted on January 10, 2022 by a supervisor within the Office of Administrative Hearing . . . asking if she wanted to interview for a promotional opportunity to a Fair Hearing Specialist 2, grade 18 position")). However, the Amended Complaint contains no allegations whatsoever that OTDA failed to consider Plaintiff for a promotion for which she applied or denied her a promotion. Indeed, Plaintiff alleges that *she* "declined" the interview invitations. (*Id.* at 16). Although Plaintiff alleges that the interviews for promotions were futile because "the interviewers" and others had "stalked, harassed, bullied, and disrespected" her during the interviews, (*id.* at 16–17), these allegations are devoid of concrete facts and the Court need not credit them. *Calcano*, 36 F.4th at 75 (explaining that courts "need not credit" "naked assertion devoid of further factual enhancement" (quoting *Iqbal*, 556 U.S. at 678)). The Court therefore concludes that Plaintiff has failed to allege an adverse action in connection with the promotion to Fair Hearing Specialist 2.

Accordingly, Plaintiff's claim of Title VII discrimination against OTDA is dismissed.[5]

### D.     Title VII – Hostile Work Environment

OTDA seeks dismissal of Plaintiff's hostile work environment claim on the ground that Plaintiff's "bald assertions" that OTDA employees harassed, stalked or bullied her during her employment at OTDA are insufficient to state a plausible claim for relief. (Dkt. No. 26-1, at 11–13). Plaintiff opposes dismissal. (Dkt. No. 28, at 32–33).

"To establish a hostile work environment under Title VII . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999). Plaintiff's hostile work environment allegations—that from 2012 to the present, OTDA employees have screamed at her, stalked her, bullied her, physically assaulted her, ignored her, shunned her, sabotaged her work, eavesdropped on her cellphone and on conversations in her apartment, (Dkt. No. 23, at 13–14)—lack supporting factual details. Without more information about when these incidents occurred, how often or frequently, who was involved, what was said, or describing the conduct that constituted the bullying, stalking, and harassment, the nonspecific allegations that OTDA employees engaged in this conduct are insufficient to allow a plausible inference that Plaintiff was subjected to a hostile work environment because of her membership in a protected class. *See Saunders v.*

---

[5] To the extent Plaintiff premises a discrimination claim on her allegation that Spitzberg made sexual advances to her "in the past," (Dkt. No. 23, at 21), the Court notes this allegation fails as it is wholly conclusory.

12

*Queensborough Cmty. Coll.*, No. 13-cv-5617, 2015 WL 5655719, at *6, 2015 U.S. Dist. LEXIS 128608, at *16–17 (E.D.N.Y. Sept. 24, 2015) (dismissing hostile work environment claim, explaining that "[w]ithout more information about what the allegedly harassing and unprofessional comments and conduct consisted of, and how" the plaintiff's supervisor and "coworkers demonstrated hostility," allegations that supervisor, inter alia, "'ignited the office with her unprofessional snide remarks,' 'publicly humiliated' Plaintiff, made Plaintiff 'the target of ongoing harassment,' [and]'constantly put [Plaintiff] on the spotlight,'" were "too vague and conclusory to support a hostile work environment claim") (citations omitted). Accordingly, Plaintiff's Title VII hostile work environment claim against OTDA is dismissed.

### E. Title VII – Retaliation

OTDA argues that like the original Complaint, the Amended Complaint "is devoid of . . . facts to sufficiently allege a claim of retaliation." (Dkt. No. 26-1, at 13). Plaintiff opposes OTDA's motion. (Dkt. No. 28, at 33–34).

Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3a. "Thus, for a Title VII retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against h[er], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

#### 1. Protected Activity

To the extent Plaintiff alleges that her complaint to OTDA supervisors and management in or about 2012 that she was being stalked, harassed, and bullied is a protected activity, (Dkt.

No. 23, at 14 ("Plaintiff complained to (OTDA) management advising them she is stalked, harassed, bullied and her work is sabotaged.")), her claim fails. The Amended Complaint asserts no facts that would allow an inference that Plaintiff complained of racial, ethnic, color, national origin, or sex discrimination and thus there is no basis to infer that Plaintiff engaged in protected activity under Title VII. *See Qamar v. Sheridan Healthcare of Conn.*, No. 18-cv-1359, 2020 WL 4548136, at *11, 2020 U.S. Dist. LEXIS 140557, at *35 (D. Conn. Aug. 6, 2020) ("[C]omments which do not complain of discrimination—in other words, complaints about the workplace which do not implicate the protections of Title VII—are not protected."); *Int'l. Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity.").[6]

The Amended Complaint does, however, allege that on January 14, 2022 and January 22, 2022, Plaintiff emailed "supervisors and managers within her chain of command" copies of the of this case and complained of mistreatment "due to [her] minority status." (Dkt. No. 23, at 16–17).[7] As the Complaint in this case contains allegations of racial, ethnic, color, national origin, and sex discrimination, as well as retaliation, and Plaintiff referenced mistreatment based on her minority status, the Court concludes that the Amended Complaint plausibly alleges that Plaintiff engaged in protected activity.

---

[6] To the extent Plaintiff seeks to rely on her complaints to the EEOC regarding her prior employer, NYL, she has failed to plausibly allege how the OTDA was made aware of these complaints or that any complaints regarding NYL were the but-for cause of any adverse action at OTDA.

[7] Plaintiff also alleges that she provided a copy of "the active Civil Case" to Rebecca Rourke, Psy.D., at the Employee Health Service. (Dkt. No. 23, at 18). Plaintiff, however, does not indicate when she did this.

### 2. Adverse Actions and Causal Connection

Generally, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Id.* (quoting *Burlington Northern*, 548 U.S. at 64). The Supreme Court has explained that it has:

> phrase[d] the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of words used or the physical acts performed."

*Burlington Northern*, 548 U.S. at 69 (quoting *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)). To determine "whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).

"To adequately plead causation, 'the plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action.'" *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90). However, "'[b]ut-for' causation does not . . . require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (quoting *Vega*, 901 F.3d at 91). "A retaliatory purpose can be shown indirectly by timing: protected

15

activity followed closely in time by adverse employment action," *Vega*, 801 F.3d at 90, or "directly through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

### a.   Harassment by Co-Workers

The Amended Complaint alleges that since beginning work at OTDA in 2012, Plaintiff has been unlawfully surveilled, harassed, bullied, disparaged, threatened with disciplinary action, sabotaged, stalked, screamed at, glared at, and physically assaulted. (Dkt. No. 23, at 13–14). Without additional details, these conclusory allegations are insufficient to allege adverse action. *See, e.g.*, *Mira v. Argus Media*, No. 15-cv-9990, 2017 WL 1184302, at *8, 2017 U.S. Dist. LEXIS 46691, at *24–25 (S.D.N.Y. Mar. 29, 2017) (noting that while it was "not difficult to imagine that retaliatory stalking and surveillance might intimidate a reasonable employee and dissuade her from complaining about discrimination," because the plaintiff's allegation of stalking and surveillance were largely "unaccompanied by any concrete facts," the court declined "to draw [the plaintiff's] far-fetched inference that the alleged events ensued from a massive stalking and surveillance project by" her employer); *Baez v. Visiting Nurse Serv. of New York Fam. Care Serv.*, No. 10-cv-6210, 2011 WL 5838441, at *6, 2011 U.S. Dist. LEXIS 133930, at *16 (S.D.N.Y. Nov. 21, 2011) ("The generalized '[h]arassment, [b]ullying, . . . [i]ntimidations, [and] [s]talking' plaintiff claims to have experienced after filing Charge II are too non-specific to support a retaliation claim.").

### b.   Failure to Promote

Plaintiff's claim of retaliatory failure to promote fails for the same reason her claim of discriminatory failure to promote failed: Plaintiff alleges no facts that would allow a plausible

16

inference that OTDA refused to consider her for, or denied her, a promotion. *See supra* Section IV.C.3.

### c. Evaluation by Employee Health Service

Piecing together allegations in the Amended Complaint and Plaintiff's response in opposition to the motion to dismiss, it appears Plaintiff seeks to assert a claim that in February or March 2022, OTDA sent Plaintiff to an evaluation at the "NYS Department of Civil Service, Employee Health Service," in retaliation for her complaints of discrimination and retaliation. (Dkt. No. 23, at 16, 18; Dkt. No. 28, at 18, 20–21). "[S]everal district courts in the Second Circuit have concluded that discretionary employee examination or testing requirements do not by themselves amount to adverse employment action for the purposes of federal employment discrimination and retaliation claims." *Larsen v. Berlin Bd. of Educ.*, 588 F. Supp. 3d 247, 257–58 (D. Conn. 2022) (citing *Baum v. Cnty. of Rockland*, 337 F. Supp. 2d 454, 473 (S.D.N.Y. 2004), *aff'd*, 161 F. App'x 62 (2d Cir. 2005); *Figueroa v. City of New York*, 198 F. Supp. 2d 555, 568–69 (S.D.N.Y. 2002), *aff'd*, 118 F. App'x 524 (2d Cir. 2004); *Brady v. Dammer*, 573 F. Supp. 2d 712, 724 (N.D.N.Y. 2008) ("requiring an employee to submit to a [fitness-for-duty] exam does not, without more, constitute a materially adverse change")). However, courts have noted "'the possibility that an employer may take adverse employment action if it abuses its discretion' in requiring fitness for duty examinations," *Reynolds v. HNS Mgmt. Co.*, No. 20-cv-471, 2023 WL 2526532, at *7, 2023 U.S. Dist. LEXIS 43331, at *19 (D. Conn. Mar. 15, 2023) (quoting *Larsen*, 588 F. Supp. 3d at 258), and that a "fitness for duty examinations accompanied by material consequences," such as unpaid leave may "constitute a 'materially adverse change' to [a plaintiff's] terms and conditions of her employment," *McNulty v. Cnty. of Warren, New York*, No. 16-cv-843, 2019 WL 1080877, at *10, 2019 U.S. Dist. LEXIS 36591, at *31

17

(N.D.N.Y. Mar. 7, 2019) (quoting *O'Toole v. Ulster County*, No. 12-cv-1228, 2014 WL 4900776, at *10, 2014 U.S. Dist. LEXIS 138045, at *28–29 (N.D.N.Y. Sept. 30, 2014)).

Even construing Plaintiff's allegations liberally, there are no facts that would allow a plausible inference that OTDA abused its discretion in sending Plaintiff for evaluation at the Employee Health Services or that the evaluation was accompanied by a material consequence or change in the terms and conditions of Plaintiff's employment.[8] Indeed, Plaintiff alleges that "Rebecca Rourke, Psy.D" concluded that "based on the evaluation, the plaintiff is fit to perform the essential duties of a Fair Hearings Specialist 1." (Dkt. No. 23, at 18). Thus, the Court concludes that Plaintiff has failed to allege that the evaluation was an adverse action.

Accordingly, Plaintiff's Title VII retaliation claim against OTDA is dismissed.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 26) the Amended Complaint (Dkt. No. 23) is **GRANTED** in its entirety; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 23) is **DISMISSED**;[9] and it is further

---

[8] Nor is there any basis for concluding that it impacted any application for promotion as Plaintiff had declined the interviews in January 2022, *prior* to the February 2022 referral for evaluation. (Dkt. No. 23, at 16, 18; Dkt. No. 28, at 18, 20–21).

[9] While mindful of her pro se status, the Court notes that Plaintiff has had the benefit of the Court's findings regarding the deficiencies in her Complaint and the opportunity to replead. Nothing in the Amended Complaint or Plaintiff's response to Defendants' motion to dismiss suggests that a second opportunity to replead would yield a viable pleading. Accordingly, the Court declines to allow further amendment under these circumstances.

**ORDERED** the Clerk shall serve this Memorandum-Decision and Order in accordance with the Local Rules and close this case.

**IT IS SO ORDERED**.

Dated: <u>April 17, 2023</u>
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge